UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FULVIO CASTILLO GOMEZ, | Case No. 26-cv-06134-NW |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES, et al., | |
| Defendants. | Re: ECF No. 2 |

On June 18, 2026, Plaintiff Fulvio Castillo Gomez filed a complaint for declaratory and injunctive relief under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, (ECF No. 1) as well as an *ex parte* motion for temporary restraining order ("TRO") (ECF No. 2) seeking the production of his immigration records in preparation of a June 26, 2026 pre-deprivation hearing in Harlington, Texas.[1]  Although Mr. Gomez initially filed his motion on an *ex parte* basis, at the Court's direction (ECF No. 7), Defendants[2] filed an opposition (ECF No. 9), and Mr. Gomez filed a reply (ECF No. 10).

For the reasons that follow, the Court GRANTS the motion for temporary restraining order.

I.      **BACKGROUND**

This Order assumes familiarity with the facts from the Court's May 5, 2026 Order

---

[1] Unless otherwise noted, record citations are to material in the Electronic Case File ("ECF") of *Castillo Gomez v. U.S. Citizenship and Immigration Services*, Case No. 26-cv-06134, and pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Defendants are U.S. Citizenship and Immigration Services ("USCIS"), U.S. Department of Homeland Security ("DHS"), Executive Office for Immigration Review ("EOIR"), and U.S. Department of Justice ("DOJ").

Granting Preliminary Injunction in related case *Castillo Gomez v. Albarran*, 26-cv-01790-NW ("*Gomez I*"), *Gomez I* ECF No. 29, and repeats only facts necessary for the resolution of the motion currently before the Court.

### A.    Mr. Gomez's March 2026 Detention and Release

Mr. Gomez is a 57-year-old man from El Salvador who has lived in the United States for more than 20 years.  On March 2, 2026, Mr. Gomez was arrested and detained without warning by Immigration and Customs Enforcement ("ICE") officers outside a bank in Napa, California.  Shortly after, Mr. Gomez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, and an *ex parte* motion for temporary restraining order ("TRO") contending that he was unlawfully confined in violation of the Constitution and laws of the United States.  On March 3, 2026, the Court granted the TRO and ordered Mr. Gomez released from custody the same day.  On May 5, 2026, the Court granted Mr. Gomez's request for a preliminary injunction and enjoined "[t]he Government from re-detaining [Mr. Gomez] unless and until the Government complies with the procedural requirements of 8 C.F.R. § 241.4 and the Due Process Clause, including providing [Mr. Gomez] notice, an opportunity to be heard, and an individualized custody determination before a neutral and independent immigration judge."  *Gomez I* ECF No. 29 at 14.

### B.    Mr. Gomez's Attempts to Obtain Records

#### 1.    Harlingen Immigration Court

On March 5, 2026, Mr. Gomez's immigration counsel sent a request to the Harlingen Immigration Court seeking Mr. Gomez's record of proceedings ("ROP") to evaluate a possible motion to reopen following a final order of removal.  ECF No. 2-11 at 3.  The next day, the Harlingen Immigration Court directed immigration counsel to request the records from the EOIR's Office of the General Counsel, under FOIA.  *Id.* at 2.

#### 2.    Government Counsel

On March 5, 2026, nearly two years after Mr. Gomez made his first of what is now three FOIA requests to obtain his immigration file from the Government—and was informed that the *Government could not find any such records*—Mr. Gomez's habeas counsel emailed the Government's counsel in *Gomez I* to request a copy of Mr. Gomez's ROP, in order "to facilitate

these federal proceedings." [3]  ECF No. 2-12 at 2.  Habeas counsel noted that "[w]e made FOIA requests for it, but it can take weeks or longer to get a response."  *Id.*  The Government's attorney responded that "ICE is generally opposed to providing ROPs outside of FOIA requests" and suggested that Mr. Gomez "try reaching out to EOIR, but" noted that, "based on the procedural history in [Mr. Gomez's] immigration case, is that the ROP consists solely of the NTA, I213, and removal order, which have all already been filed."  *Id.*

### 3.     USCIS FOIA Request

On March 5, 2026, Mr. Gomez again submitted a FOIA request to USCIS seeking the "[e]ntire file of Fulvio CASTILLO GOMEZ," as well as expedited processing on grounds of a loss of substantial due process rights."  ECF No. 2-14 at 4–5.  USCIS acknowledged receipt of the request on March 20, 2026.  ECF No. 2-15.

On April 4, 2026, USCIS identified 54 responsive pages, of which USCIS "reviewed —

---

[3] Although not noted in the instant motion for temporary restraining order, the record in *Gomez I* shows that Mr. Gomez's attempts to obtain his immigration file began in 2024, two years before he was detained in May 2026.  *Gomez I* ECF No. 12-2 ¶ 9; *id.*, ECF No. 20-8; *see also* Fed. R. Evid. 201(c) ("The court . . . may take judicial notice on its own . . ."); *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through PACER.").

In 2023, Mr. Gomez hired an immigration attorney to obtain legal status.  *Gomez I* ECF No. 12-2 ¶ 9.  On May 3, 2024, Mr. Gomez's attorney submitted a Form EOIR-59 Certification and Release of Records, seeking the release of "any and all information relating to [Mr. Gomez.]"  *Gomez I* ECF No. 20-8 at 2.  On May 6, 2024, Mr. Gomez's attorney also submitted a FOIA request to EOIR seeking to obtain "every record in your authority for the subject of the record, Fulvio Castillo Gomez . . . including but not limited to any Records of Proceeding (ROP), any apprehension records . . ."  *Id.* at 5.

On May 7, 2024, EOIR responded to the FOIA request and stated that "[a]fter conducting a name search in our database, we could not locate the record with the information provided.  Therefore, the request has been administratively closed."  *Id.* at 9.  The response further stated that "EOIR is not the custodian of records for DHS or its components, nor does EOIR have access to DHS's A-files. EOIR does not create an ROP until matters are initiated by DHS.  Nevertheless, EOIR may create and maintain ROPs for proceedings other than removal proceedings (i.e., credible fear reviews, bond hearings).  You may request a copy of your Notice to Appear (NTA) and full A-file from DHS."  *Id.*

On May 7, 2024, counsel submitted another FOIA request that sought the same records as the prior request.  *Id.* at 11.  On July 16, 2024, EOIR responded that "[t]he A-number you provided does not appear in our database.  Therefore, your request has been administratively closed."  *Id.* at 19.  The response reiterated that Mr. Gomez could request his NTA and full A-file from DHS. *Id.*

United States District Court
Northern District of California

and . . . determined to release all information except those portions that are exempt pursuant to 5 U.S.C. § 552 (b)(6)[,] (b)(7)(c) and (b)(7)(E) of the FOIA." ECF No. 2-5 at 2. USCIS then produced only 12 documents in their entirety, redacted and produced 19 additional documents, and fully withheld 23 pages of Mr. Gomez's March 2, 2026 Form I-213 claiming "they contain no reasonably segregable portion(s) of nonexempt information." *Id.*; *see* ECF No. 2-4.

Mr. Gomez filed an administrative appeal on April 7, 2026. ECF No. 2-6. The estimated completion date of that appeal is not until March 29, 2027. *Id.*

### 4.  EOIR FOIA Request

On March 6, 2026, Gomez, through his immigration counsel, submitted a FOIA request to EOIR seeking Gomez's entire Alien File ("A-File"), as well as a request to expedite based on Mr. Gomez's detention. ECF No. 2-8. On March 9, 2026, EOIR denied the request to expedite on grounds that Mr. Gomez "did not meet the threshold" for any of the bases for expedited treatment. ECF No. 2-13 at 2 ("The FOIA regulations states that expedited treatment is granted if there is an exceptional need such as jeopardy to life or personal safety, a threatened loss of substantial due process rights, or an urgency to inform the public concerning actual or alleged Federal Government activities.") (citing 28 C.F.R. § 16.5(e)). The FOIA request remains pending as of June 18, 2026. ECF No. 2-8 at 2.

On June 18, 2026, Mr. Gomez's immigration counsel emailed EOIR to again request expedited treatment. ECF No. 2-16 at 2; ECF No. 2-17 at 2–3. Counsel explained that Mr. "Gomez has been scheduled for a pre-deprivation bond hearing on June 26, 2026 at the Harlingen Immigration Court" and that he "requires a copy of his file in order to adequately prepare for this hearing." *Id.* (both). EOIR responded that same day stating: "[t]he record for Castillo-Gomez, Fulvio was moved to the Federal Record Center after Immigration Court proceeding in 2006, your request is in the appropriate queue to have the record sent to us from FRC. Your request remains pending at this time." ECF No. 2-17.

### C.  June 26, 2026 Pre-Deprivation Bond Hearing

On May 20, 2026, DHS, through its counsel, Mr. William Skewes-Cox, filed a motion in the Harlington Immigration Court seeking an expedited pre-deprivation bond hearing for

Mr. Gomez.[4]  ECF No. 2-9.  On June 5, 2026, the Harlington Immigration Court scheduled a hearing for June 26, 2026, at 10:30 a.m. Central Time.  ECF No. 2-3.  Counsel for Mr. Gomez received the notice on June 15, 2026, and, pursuant to the terms of the preliminary injunction, notified the Court of the proceeding the same day.  ECF No. 2-10; *see Gomez I* ECF No. 35.

On this latter point, the Court notes that the Government violated this Court's May 5, 2026 Order in *Gomez I*, which granted a preliminary injunction.  That Order required that the "parties shall immediately inform the Court, within three days, if there are any changes to Petitioner's immigration status or upcoming immigration proceedings."  *Gomez I* ECF No. 29.  Mr. William Skewes-Cox, along with Mr. Michael Starrett and Ms. Pamela Johann, represent the respondents in *Gomez I*, and were therefore fully informed of this Court's Order, when the Court issued it, when less than three weeks later, on May 20, 2026, Mr. Skewes-Cox filed a motion seeking an expedited pre-deprivation bond hearing for Mr. Gomez in Texas, and critically when the Immigration Court issued its Order on June 5, 2026, setting an expedited hearing for Mr. Gomez. The Texas Immigration Court's Order obligated the Government to inform the Court of that event by no later than June 8, 2026.  Instead, the Government entirely failed to notify the Court.  The Court did not learn of this change in circumstance until Mr. Gomez filed his notice on June 15, 2026 (ECF No. 2-10), which is when Mr. Gomez and his counsel first received notice of the

---

[4] In its motion for pre-deprivation bond hearing, DHS argued that "[v]enue is proper to the Harlington Immigration Court because that is the immigration court that issued the removal order against [Mr. Gomez]."  ECF No. 2-9 at 3; *Gomez I* ECF No. 9-2 at 3 (March 4, 2006 Form I-213 indicating Mr. Gomez was apprehended in Pharr, Texas on March 3, 2006).  The removal order was issued on May 2, 2006.  ECF No. 2-9 at 29.  Mr. Gomez has since lived in California, where he has married his wife in 2017 and has supported her since she was diagnosed with breast cancer three years ago; paid taxes; started and registered a business in Napa County and San Jose; and obtained a driver's license.  ECF No. 10-2 ¶ 5; *Gomez I* ECF No. 12-2 ¶¶ 5, 8, 10; *Gomez I* ECF No. 20-8 at 3; *Gomez I* ECF Nos. 20-4, 20-5, 20-6, 20-11.  Nothing in the record in this case or *Gomez I* suggests that Mr. Gomez has had any meaningful contact with Texas since he left after being detained in 2006.

The Court also notes that Mr. Gomez's immigration counsel has "attempted to file [in the Harlingen Immigration Court] a Form EOIR-33, Alien's Change of Address Form, together with a motion for continuance and motion for change of venue to move Mr. Castillo Gomez's case to the San Francisco Immigration Court or the Concord Immigration Court."  ECF No. 10-2 ¶ 5.  But despite repeated efforts and attempts to communicate with the Harlingen Immigration Court, counsel has been unable to enter an appearance or file motions on Mr. Gomez's behalf.  *Id.* ¶¶ 3–11.

*United States District Court*
*Northern District of California*

June 26 hearing.  The Court therefore separately issues an **ORDER TO SHOW CAUSE** why sanctions, including case specific and monetary sanctions, should not be imposed against the *Gomez I* respondents and their counsel, Mr. William Skewes-Cox, Mr. Michael Starrett, and Ms. Pamela Johann, in *Gomez I*.

### D.     The Instant FOIA Action

On June 19, 2026, Mr. Gomez concurrently filed a complaint and the instant motion for an *ex parte* TRO.  ECF Nos. 1, 2.  Mr. Gomez's complaint asserts 5 claims: (1) Improper Withholding of Records in Violation of FOIA, 5 U.S.C. § 552(a)(8)(A)(i), (b), against USCIS and DHS; (2) Failure to Produce Reasonably Segregable Information, in Violation of FOIA, 5 U.S.C. § 552(a)(8)(A)(ii), (b), against USCIS and DHS; (3) Failure to Make a Timely Determination on Administrative Appeal in Violation of FOIA, 5 U.S.C. § 552(a)(6)(A), (a)(6)(C), against USCIS and DHS; (4) Failure to Make a Timely Determination and Unlawful Withholding in Violation of FOIA, 5 U.S.C. § 552(a)(3)(A), (a)(6)(A), (a)(6)(C), against EOIR and DOJ; and (5) Wrongful Denial of Expedited Processing in Violation of FOIA, 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e)(1)(iii), against EOIR and DOJ.  ECF No. 1 ¶¶ 56–77.

In his motion, Mr. Gomez seeks the following relief:

> (1) requiring Defendants EOIR and DOJ to produce, in full and without redaction, the entire Record of Proceedings in Plaintiff's immigration case—Plaintiff's own immigration court file—sufficiently in advance of the June 26, 2026 hearing for counsel to use it; (2) requiring Defendants USCIS and DHS to disclose the entire contents of Plaintiff's AFile, including the 23 pages withheld in full and the narrative section of the Form I-213, likewise sufficiently in advance of the June 26, 2026 hearing; (3) in the alternative or in addition as to USCIS and DHS, requiring them to release all reasonably segregable non-exempt portions of the responsive records and to produce a Vaughn index identifying each withheld record or portion, the exemption claimed, and a particularized justification—also sufficiently in advance of the June 26, 2026 hearing—so that the propriety of any withholding may be resolved before the hearing, including through expedited or in camera review as the Court directs . . . ; and (4) issuing an order to show cause why a preliminary injunction should not issue.

Mr. Gomez further requests that the Court waive or set a nominal bond under Rule 65(c), arguing that an injunction will not cause monetary harm to Defendants.

6

## II.    LEGAL STANDARD

Courts use the same standard for issuing a temporary restraining order as that for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical.") (internal quotation marks and citation omitted). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. Courts may still issue a preliminary injunction if a "plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits," if the balance of equities "tips sharply in the plaintiff's favor" and the plaintiff establishes that they are likely to suffer irreparable harm and that an injunction is in the public interest. *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).[5]

## III.    DISCUSSION

Based on the Court's review of Mr. Gomez's motion, allegations in the complaint, and relevant authorities, the Court finds that Mr. Gomez has met the requirements for a TRO.

### A.    Likelihood of Success on the Merits

"FOIA requires that 'each [federal] agency, upon any request for records . . . , shall make the records promptly available to any person.'" *Ctr. for Investigative Reporting v. United States Dep't of Lab.*, 145 F.4th 1211, 1217 (9th Cir. 2025) (quoting 5 U.S.C. § 552(a)(3)(A); brackets in the original). The purpose of FOIA is "to facilitate public access to government records and thereby 'ensure an informed citizenry' that could hold the government 'accountable to the governed.'" *Id.* (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).

---

[5] Where, as here, the Government is a party, the last two *Winter* factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

United States District Court
Northern District of California

### 1. EOIR

Mr. Gomez is likely to prevail on his claims against EOIR.

### a. The Agency's Time to Respond

An agency that receives a FOIA request has 20 business days "after the receipt of any such request whether to comply with such request and shall immediately notify the" requesting party of (1) the "determination and the reasons therefor;" (2) the requesting party's "right . . . to seek assistance from the FOIA Public Liaison of the agency;" and (3) if the determination is adverse, the right to appeal and seek dispute resolution services. 5 U.S.C. § 552(a)(6)(A)(i)(I)–(III). The 20-day deadline begins "on the date on which the request is first received by the appropriate component of the agency but in any event not later than ten days after the request is first received by any component of the agency that is designated in the agency's regulations under this section to receive requests under this section." 5 U.S.C. § 552(a)(6)(A)(ii). The deadline may only be tolled if the agency requests additional information and while the agency awaits such information, or "if necessary to clarify with the requester issues regarding fee assessment." 5 U.S.C. § 552(a)(6)(A)(ii)(I)–(II).

This 20-day deadline may be extended by no more than 10 days only under "unusual circumstances" and upon written notice to the requesting party. 5 U.S.C. § 552(a)(6)(B)(i). Under the statute, "'unusual circumstances' means, but . . . only to the extent reasonably necessary to the proper processing of the particular requests" as

> (I) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;
>
> (II) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or
>
> (III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

5 U.S.C. § 552(a)(6)(A)(iii)(I)–(III).

"[I]f an agency misses its statutory deadline to respond to a FOIA request, the statute

deems the exhaustion requirement constructively satisfied, and the requester may pursue relief directly in federal court." *Corbett v. Transp. Sec. Admin.*, 116 F.4th 1024, 1028 (9th Cir. 2024) (citing 5 U.S.C. § 552(a)(6)(C)(i)). "[E]xhaustion under FOIA is a prudential rather than jurisdictional consideration,' and courts have the discretion to waive the exhaustion requirement in certain circumstances, including if they find that exhaustion would be futile." *Id.* (quoting *Aguirre v. United States Nuclear Regul. Comm'n*, 11 F.4th 719, 725 (9th Cir. 2021)).

For the reasons set forth below, Mr. Gomez is likely to succeed on the merits of his claims.

### b.   Expedited Processing

FOIA provides that "[e]ach agency shall promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records" under two circumstances: first, "in cases in which the person requesting the records demonstrates a compelling need; and [second,] in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i)(I)–(II); *see* 28 C.F.R. § 16.5(b) ("All components must designate a specific track for requests that are granted expedited processing . . ."). A "compelling need" exists when "(I) . . . a failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(I)–(II); *see* 28 C.F.R. § 16.5(e)(1). An agency that grants expedited processing "shall process [the request] as soon as practicable[.]" 5 U.S.C. § 552(a)(6)(E)(iii).

In addition to FOIA's statutory framework, 28 C.F.R. § 16, Subpart A sets forth "the rules that the Department of Justice follows in processing requests for [FOIA] records[.]" 28 C.F.R. § 16.1(a); *see id.* ("The rules in this subpart should be read in conjunction with the text of the FOIA and the Uniform Freedom of Information Fee Schedule and Guidelines published by the Office of Management and Budget[.]"). "A request for expedited processing may be made at any time," and "requests . . . shall be processed on an expedited basis whenever it is determined that they involve:"

(i) Circumstances in which the lack of expedited processing could

reasonably be expected to pose an imminent threat to the life or physical safety of an individual;

(ii) An urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information;

(iii) The loss of substantial due process rights; or

(iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence.

28 C.F.R. § 16.5(e)(1)(i)–(iv), (2).

### c.     Analysis

Approximately 73 business days passed between the time Mr. Gomez submitted his most recent FOIA request to EOIR on March 6, 2026, and the June 19, 2026 filing of his complaint in this action.[6]  As EOIR has failed to respond within the mandatory 20-business day deadline, Mr. Gomez has exhausted his administrative remedies and may seek relief in federal court. *Corbett*, 116 F.4th at 1028 (9th Cir. 2024); 5 U.S.C. § 552(a)(6)(C)(i).  EOIR's failure to timely respond also means that Mr. Gomez is likely to prevail on his fourth claim for Failure to Make a Timely Determination and Unlawful Withholding.

Mr. Gomez is also likely to prevail on his fifth claim for Wrongful Denial of Expedited Processing.  Mr. Gomez has demonstrated that if he does not obtain his records sufficiently in advance of the June 26 pre-deprivation hearing, his attorneys will not be able to adequately prepare, which will result in "the loss of [Mr. Gomez's] substantial due process rights[.]"  28 C.F.R. § 16.5(e)(1)(ii); ECF No. 10-2 ¶ 12; *see* § III(B), *infra*.  EOIR thus has no basis to deny expedited processing of his FOIA request.

### 2.     USCIS

Furthermore, Mr. Gomez is likely to succeed on the merits of his claims against USCIS.

"The mandate of the FOIA calls for broad disclosure of Government records." *C.I.A. v. Sims*, 471 U.S. 159, 166–67 (1985).  At the same time, "Congress recognized . . . that the government may legitimately keep some information from the public." *Ctr. for Investigative*

---

[6] As noted in Section I(B) above, this was Mr. Gomez's third overall FOIA request in two years seeking his immigration file from the Government.

*Reporting*, 145 F.4th at 1217.  To that end, "FOIA includes nine exemptions, under which agencies may withhold information that they would otherwise be required to disclose." *Id.* (citing 5 U.S.C. § 552(b)).  "FOIA exemptions should be 'construed narrowly' in light of FOIA's pro-disclosure purpose." *Animal Legal Def. Fund v. United States Dep't of Agric.*, 933 F.3d 1088, 1096 (9th Cir. 2019) (citation omitted).  The agency bears "[t]he burden of proving that withheld documents fit into the exemptions[.]" *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 782 (9th Cir. 2022) (citing *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).

USCIS invoked exemptions under 5 U.S.C. § 552(b)(6), (b)(7)(C) and (b)(7)(E).  ECF No. 2-5 at 2.  Mr. Gomez has shown that none of these exemptions are likely to apply.

Exemptions (b)(6) and (b)(7)(C) permit agencies to withhold documents on the basis that such disclosure would result in "an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6) (FOIA "does not apply to matters that are-- personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"); 5 U.S.C. § 552(b)(7)(C) (exempting from FOIA "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy").  "Exemptions 6 and 7(C) speak of an 'unwarranted' invasion of personal privacy, not any invasion." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009).

Mr. Gomez only seeks *his* records for use in *his* pre-deprivation hearing.  The only personal privacy interest that could be invaded in this instance is that of Mr. Gomez.  Because Mr. Gomez is the one seeking his own immigration records—documents to which he is entitled, including his A-file that he intends to use it to oppose *his* re-detention—exemptions(b)(6) and (b)(7)(C), do not apply.  *See Dent v. Holder*, 627 F.3d 365, 374 (9th Cir. 2010) ("Congress has provided that to meet his burden of proof in removal proceedings, 'the alien shall have access' to his entry document 'and any other records and documents, not considered by the Attorney General to be confidential, pertaining to the alien's admission or presence in the United States.'  This mandatory access law entitled Dent to his A-file.") (footnote omitted; quoting 5 U.S.C. § 552).

Exemption (b)(7)(E) applies to documents that "would disclose techniques and procedures

11

for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]" 5 U.S.C. § 552(b)(7)(E). "The statutory requirement that the government show that disclosure 'could reasonably be expected to risk circumvention of the law' applies only to guidelines for law enforcement investigations or prosecutions, not to techniques and procedures." *Am. C.L. Union of N. California v. United States Dep't of Just.*, 880 F.3d 473, 491 (9th Cir. 2018). Additionally, "'Exemption 7(E) only exempts investigative techniques not generally known to the public.'" *Id.* (quoting *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995)).

From a review of USCIS' production, at least some of the Exemption (b)(7)(E) redactions clearly do not relate to "investigative techniques not generally known to the public." *Id.*; *see* ECF No. 2-4. For instance, a section titled "Name and Address of (Last)(Current) U.S. Employer" was redacted pursuant to "(b)(6)(b)(7)(c)(b)(7)(E)."[7] ECF No. 2-4 at 3. The name of Mr. Gomez's employer, if any, is clearly not an investigative technique.

Similarly, USCIS redacted 23 entire pages of Mr. Gomez's Form I-213 pursuant to "(b)(7)(E)," essentially rendering it useless. ECF No. 2-4 at 6–28. While the complete nature of the withheld information is not obvious from the face of the document, a "Form I-213, Record of Deportable/Inadmissible Alien, contains information regarding the person's country of birth, country of citizenship, and other statements such as their date and manner of entry." *United States v. Ramos*, No. CR-21-01242-001-TUC-JCH (EJM), 2023 WL 2787769, at *2 n.1 (D. Ariz. Apr. 5, 2023). At a minimum, Mr. Gomez's country of birth, citizenship, and facts surrounding his entry are not investigative techniques. Notably, in *Gomez I*, the respondents filed Mr. Gomez's 2006 Form I-213 on the Court's docket with only the case and file numbers redacted. *Gomez I* ECF No. 9-2 at 2–3. The narrative—which describes Mr. Gomez's arrest/encounter, entry, and immigration history; the results of records checks; and disposition—was left unredacted. *Id.* Mr. Gomez's 2026 Form I-213 presumably contains similar factual information. That the *Gomez I*

---

[7] For the reasons stated above, disclosure of this information is also not "an unwarranted invasion of [Mr. Gomez's] privacy." *See* 5 U.S.C. § § 552(b)(6), (b)(7)(C).

respondents saw fit to file the 2006 Form I-213 with limited redactions undercuts USCIS's current contention that the entire narrative of his 2026 Form I-213 is subject to Exemption (b)(7)(E).

Accordingly, Mr. Gomez is likely to prevail on his claims for improper withholding, segregability, and delay.

**B.      Irreparable Harm**

It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017) (recognizing the "irreparable harms imposed on anyone subject to immigration detention" and holding that plaintiffs had "established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time"). Indeed, where "the alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (internal quotation marks omitted).

Given his constitutional right to due process in a deportation hearing, the Court finds that Mr. Gomez will be irreparably harmed if he does not have access to his A-File in advance of the June 26 pre-deprivation hearing.  ECF No. 10-2 ¶ 13 (Counsel's "team's inability to gain access to the immigration court file or to large parts of my client's alien-file have impeded our efforts to prepare for this pre-deprivation hearing and to file a contemplated Motion to Reopen."); *see Dent v. Holder*, 627 F.3d 365, 373 (9th Cir. 2010) ("'An alien has a Fifth Amendment right to due process, including the right to a full and fair hearing in a deportation proceeding.'") (quoting *Burgos–Abril v. I.N.S.*, 58 F.3d 475, 476 (9th Cir. 1995)).  Mr. Gomez's counsel needs his records to fully prepare for the pre-deprivation hearing.  If counsel cannot adequately oppose re-detention, Mr. Gomez will be denied a full and fair opportunity to litigate his detention, and Mr. Gomez will almost certainly be detained as a consequence (particularly given that the Government already elected to arrest and detain Mr. Gomez prior to providing him with a pre-deprivation hearing). And, as the Court previously found, "[r]e-detention would likely have significant negative consequences for Mr. Gomez, his family, his employees, and his livelihood."  *Gomez I* ECF

No. 29 at 12.

The Government argues that Mr. Gomez fails to show irreparable harm because he does not "explain[] why the redacted or withheld portions of his A-file are necessary to prepare for this hearing" and, in any event, "the material is not 'essential to the integrity' of the pre-deprivation hearing." ECF No. 9 at 13, 15. The Government's argument is specious. First, as Mr. Gomez points out, the Government's motion for pre-deprivation bond hearing relies on documents that are part of Mr. Gomez's immigration file. ECF No. 2-9 at 3 ("On March 4, 2026, the respondent was served in person with a notice to appear that was read to him in his native language and that included the time, date, and location of his immigration court hearing.") (citing *id.*, Tabs B, E)[8]; *id.* at 4 ("On May 2, 2006, [Mr. Gomez] was ordered removed in absentia for failure to appear for his hearing at the date, time, and location contained on the notice to appear. *See* Tab C. Because the government did not have an address for [Mr. Gomez], the government could not locate him to execute the final order of removal. That is until [Mr. Gomez] was arrested for drunk driving in Napa, California, on October 5, 2025.") (citing *id.*, Tab D). The Government cannot rely on Mr. Gomez's records yet simultaneously deny him access to it ahead of the hearing.

Second, it is unreasonable to expect Mr. Gomez to provide specific reasons why his ROP is necessary for his pre-deprivation hearing when he has been denied an opportunity to review it. The Government's argument also misses the point. Access is necessary to allow Mr. Gomez a full and fair opportunity to prepare for his hearing. It may well be that the records are of little value for purposes of the hearing, but Mr. Gomez is entitled to review them to make that determination. It is also particularly important for Mr. Gomez to obtain his records through a FOIA request given that his immigration counsel has been prohibited from entering an appearance with the Harlingen Immigration Court and therefore cannot access the docket, including to review what documents the government has filed or what orders, if any, the immigration judge has issued. ECF No. 10-2 ¶ 12.

---

[8] The "March 4, 2026" date appears to be a typographical error. The notice to appear attached as Tab B to the motion for pre-deprivation bond hearing is dated "March 4, **2006**." ECF No. 2-9 at 26 (emphasis added).

14

Accordingly, Mr. Gomez has demonstrated that he will suffer irreparable harm without a temporary restraining order.

### C.    Balance of Equities and Public Interest

As for the balance of equities and the public interest factors of the inquiry, these factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors strongly favor Mr. Gomez.

Without his A-File, Mr. Gomez faces a deprivation of his right to due process and the loss of his personal liberty. And, as Mr. Gomez points out, any burden on the Government to expedite the production of documents is a problem of the Government's own making. DHS requested an expedited pre-deprivation bond hearing on May 20, 2026, more than two months after Mr. Gomez filed his FOIA requests. The Government cannot seek to accelerate its attempts to detain Mr. Gomez yet also deny him the right to mount an opposition by delaying a response to his FOIA requests.

Moreover, the Government has zero interest in detaining Mr. Gomez without affording him due process. Instead, the Government has the highest interest in ensuring that every person—including Mr. Gomez—is afforded due process before depriving them of their liberty. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society. . . . The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (internal quotation and citation omitted).

The Government argues that "[a] primary effect of granting a TRO would be to disadvantage other FOIA requesters who would be pushed further back in the Department's FOIA processing queue" and that "[i]t is unfair, particularly on this record, for Plaintiff to jump ahead of other requesters who filed before him, and who are waiting patiently in line for their ROP to recalled from the Federal Records Center." ECF No. 9 at 16. But Mr. Gomez has also been "waiting patiently for [his] ROP"—he has been attempting for two years to obtain his records. The Government also has not shown how the immediate production of Mr. Gomez's records will

materially slow the processing of other requests.  To that end, it is not unusual for courts to order agencies to increase the processing and production rate of documents that are subject to a FOIA request—in other words, requiring agencies to prioritize certain requests like Mr. Gomez seeks here.  *See, e.g., Am. C.L. Union Found. of S. California v. United States Immigr. & Customs Enf't*, 705 F. Supp. 3d 1077, 1092 (C.D. Cal. 2023) (finding "ICE has not presented the relevant data that would sufficiently explain what its capabilities are and demonstrate why asking it to do more would cause harm to other requestors" and ordering process rate of 1,000 pages per month until March 4, 2024 and an increased process rate of 3,000 pages per month thereafter).

The Government further argues that ordering the removal of redactions "would destroy the important protections that FOIA's exemptions are intended to safeguard" and, "[e]specially in light of the exemptions at issue—which are intended to protect the privacy rights of individuals and law enforcement techniques—the impact of provided the relief sought here would have significant negative consequences and would not be in the public interest."  ECF No. 9 at 16.  This argument lacks merit.  As explained above, there is little concern over privacy rights when Mr. Gomez's request is limited to his own records, and the *Gomez I* filing of Mr. Gomez's 2006 Form I-213 suggests that it is unlikely that the entire narrative of his 2026 Form I-213 relates to law enforcement techniques.  *See* § III(A)(2).

## IV.    CONCLUSION

For the reasons explained above, the Court GRANTS Mr. Gomez's motion for a temporary restraining order as follows:

1.     EOIR and DOJ shall produce the entire Record of Proceedings in Mr. Gomez's immigration case, without redactions, no later than **5:00 p.m. Pacific time on June 22, 2026**.

2.     USCIS and DHS shall produce the entirety of Mr. Gomez's A-File without redactions, no later than **5:00 p.m. Pacific time on June 22, 2026**.

3.     The Government is ORDERED TO SHOW CAUSE why a preliminary injunction should not issue requiring the Government's full and continued compliance with FOIA.  The Government's written response is due by **June 30, 2026**.  Any reply shall be filed by **July 2, 2026**.  The Court will conduct a hearing on the order to show cause on **July 6, 2026 at 10:00 a.m.**  The

hearing will be conducted via Zoom video conference.

4. In this case, considering the minimal risk of harm to the Government, the Court determines that security is not required.

The Government's request for supplemental briefing (ECF No. 9 at 3) is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 21, 2026

_____
Noël Wise
United States District Judge

United States District Court
Northern District of California

17